# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 7, 2026

Lyle W. Cayce
Clerk

_____

No. 25-30076

_____

James Murray; Latavius Paschal; Antone Henderson,

*Plaintiffs—Appellees*,

*versus*

James LeBlanc, *Secretary of Department of Public Safety and Corrections*; Seth Smith,

*Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:21-CV-592

_____

Before Elrod, *Chief Judge*, and Richman and Willett, *Circuit Judges*.

Per Curiam:[*]

James Murray, Latavius Paschal, and Antone Henderson allege that they were attacked in a Louisiana parish jail where they were awaiting trial. Their attackers, they maintain, consisted of both pretrial detainees like themselves and prisoners who were serving sentences in the custody of Louisiana's Department of Public Safety and Corrections. They sued James

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-30076

LeBlanc, the former Secretary of DPSC, and Seth Smith, his Chief of Operations, alleging that LeBlanc and Smith violated Plaintiffs' constitutional rights by holding sentenced prisoners alongside pretrial detainees, "functional[ly]" without classifying them, supervising them, or performing proper investigations. Both sides moved for summary judgment; LeBlanc and Smith contended that they should receive qualified immunity. The district court denied both motions, concluding that fact issues precluded summary judgment.

LeBlanc and Smith filed this interlocutory appeal, again insisting that they have qualified immunity. But, bound by our decision in *Crittindon v. LeBlanc*, 37 F.4th 177 (5th Cir. 2022), we must reject this argument. We furthermore lack jurisdiction to resolve the factual questions that the district court identified, per *Kinney v. Weaver*, 367 F.3d 337, 346–48 (5th Cir. 2004) (en banc), so we DISMISS the appeal.

I

During all times relevant to this case, all Plaintiffs were pretrial detainees at the Madison Parish Correctional Center, a parish jail in Tallulah, Louisiana. Each alleges that, while at MPCC, he was assaulted at least once by both pretrial detainees and convicted inmates, the latter of which are in DPSC's custody. *See* La. R.S. §§ 14:2(4), 15:824(A), (C)(1). Plaintiffs sued, among others, LeBlanc and Smith in their individual capacities.[1] As relevant

---

[1] Plaintiffs also sued LeBlanc and Smith in their official capacities, but they have represented to us that they will stipulate or move to dismiss those official-capacity claims, which they "intend to dismiss or abandon." LeBlanc and Smith's sovereign-immunity arguments have thus become irrelevant, and we will not address them. *See, e.g.*, *Russell v. Jones*, 49 F.4th 507, 513 (5th Cir. 2022) ("[S]tate sovereign immunity applies only to state officials in their official capacities.").

In late August 2024, the governor of Louisiana appointed a new DPSC Secretary. Per the Federal Rules of Civil Procedure, "when a public officer who is a party in an official

here, they maintain that LeBlanc and Smith's "conduct of indiscriminately holding sentenced prisoners alongside pretrial detainees at MPCC without functional classification, investigation, or staff supervision," which "allow[ed] the risk of harm from unchecked violence to flourish," violated Plaintiffs' Fourteenth Amendment rights.[2] *See* U.S. Const. amend. XIV, § 1. Specifically, Plaintiffs aver that MPCC lacked a classification system in compliance with the Basic Jail Guidelines, *see infra* p. 8, as well as adequate staffing, which lack fueled violence at MPCC and led to the attacks on Plaintiffs.

LeBlanc and Smith each moved to dismiss the claims against him and asserted qualified immunity. The district court denied both motions. Both sides then moved for summary judgment, and the district court orally denied both motions from the bench. With respect "to defendants' legal responsibility over pretrial detainees," the district court explained, LeBlanc

---

capacity . . . ceases to hold office while the action is pending," the "officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d). But the claims at issue in this appeal now involve only LeBlanc's individual capacity, so the new Secretary is not "automatically substituted" here. *See id.*

[2] Plaintiffs also brought Eighth Amendment individual-capacity claims against LeBlanc and Smith, but they have also proposed stipulating or moving to dismiss those claims. That is wise: "The protections of the Eighth Amendment against cruel and unusual punishment are limited in scope to convicted prisoners and do not apply to pretrial detainees such as the plaintiffs." *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). "The constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)); *accord Bell*, 441 U.S. at 535 n.16; *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). Because Plaintiffs have waived their Eighth Amendment claims, we leave those be. *See, e.g.*, *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993))).

and Smith "err[ed]" under *Crittindon* "in arguing that [DPSC] had no responsibility over what befalls pretrial detainees at this local jail."

But with that "legal question resolved," the district court concluded that "numerous questions of fact" remained, "precluding summary judgment." "For instance," the court explained, "there are disputes about the level of involvement of [DPSC]-sentenced inmates in the assaults" on Plaintiffs "and how many [DPSC] inmates were on the units in question." The district court also noted that fact disputes existed regarding whether DPSC "fixed" the "classification system, details about the audits, the extent to which [DPSC]-sentenced inmates were transferred when needed, and the adequacy of training and compensation of team leaders." "[C]onstruing the facts in a light most reasonable to the non-mover" for each motion, the district court determined that "a reasonable juror could find in favor of the non-mover for each claim." The court thus denied both summary-judgment motions. LeBlanc and Smith filed this interlocutory appeal.

## II

We have jurisdiction to rule on the legal question that this appeal involves—but that is all. "Ordinarily," under 28 U.S.C. § 1291, "we have jurisdiction only over final decisions of district courts." *Marler v. Adonis Health Prods.*, 997 F.2d 1141, 1142 (5th Cir. 1993) (citing 28 U.S.C. § 1291); *see id.* ("Section 1291's finality requirement 'embodies a strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing proceeding by interlocutory appeals.'" (quoting *United States v. Nixon*, 418 U.S. 683, 692 (1974))). Final decisions are those that "end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment." *Id.* (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978), *superseded by rule on other grounds as recognized in*, *Microsoft Corp. v. Baker*, 582 U.S. 23 (2017)). Here, the denial of summary judgment

to both sides did not end the litigation, so that decision is not final. *E.g.*, *BancPass, Inc. v. Highway Toll Admin., L.L.C.*, 863 F.3d 391, 397 (5th Cir. 2017).

But "we sometimes exercise our jurisdiction over an interlocutory appeal pursuant to the collateral order doctrine," a "narrow exception to the general rule that an appeal under § 1291 must await a final judgment on the merits." *Marler*, 997 F.2d at 1142 (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). That doctrine "permit[s] interlocutory appeals 'from a small category of decisions that, although they do not end the litigation, must nonetheless be considered "final."'" *BancPass*, 863 F.3d at 397 (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995)).

Denials of summary-judgment motions that assert qualified immunity fall within that category. "Under the collateral-order doctrine, a denial of summary judgment based on" qualified immunity "is immediately appealable to the extent that the appeal turns on a question of law." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016); *accord Kinney*, 367 F.3d at 346. This is so "because qualified immunity is more than 'a mere defense to liability'"—it is "also 'an immunity from suit.'" *Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022) (quoting *Pearson v. Callahan*, 555 U.S. 223, 237 (2009)). "An immunity from suit is not only a means of prevailing on the merits, but an 'entitlement not to stand trial or face the other burdens of litigation.'" *Shanks v. AlliedSignal, Inc.*, 169 F.3d 988, 991 (5th Cir. 1999) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "This entitlement is 'effectively lost if a case is erroneously permitted to go to trial.'" *Id.* (quoting *Swint*, 514 U.S. at 42). We thus hear appeals from interlocutory orders denying qualified immunity, including denials of summary-judgment motions claiming that immunity. *E.g.*, *Cooper*, 844 F.3d at 522.

No. 25-30076

But our review in that posture is circumscribed. Where, as here, "the district court denies an official's motion for summary judgment predicated upon qualified immunity, the district court can be thought of as making two distinct determinations, even if only implicitly." *Kinney*, 367 F.3d at 346. First, the district court decides "that certain conduct 'violate[d] clearly established . . . rights of which a reasonable person would have known.'" *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 561 (5th Cir. 2003) (alteration in original) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Kinney*, 367 F.3d at 346. "Second, the court decides that a genuine issue of fact exists regarding whether the defendant(s) did, in fact, engage in such conduct."[3] *Kinney*, 367 F.3d at 346; *accord Finch*, 333 F.3d at 561.

We lack jurisdiction to review the second type of conclusion in an interlocutory appeal. *Kinney*, 367 F.3d at 346. In that posture, "we cannot

---

[3] *Kinney*'s reference to "objective unreasonableness," *see, e.g.*, 367 F.3d at 346, does not add a third qualified-immunity prong. The qualified-immunity inquiry has only two prongs. *E.g.*, *Pearson*, 555 U.S. at 232 ("[T]h[e] [Supreme] Court mandated a two-step sequence for resolving government officials' qualified immunity claims."); *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc) ("To . . . overcome qualified immunity, the plaintiff must satisfy a two-prong test." (citing *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc))); *Trent v. Wade*, 776 F.3d 368, 377 (5th Cir. 2015) ("We have discretion 'in deciding which of the two prongs of the qualified immunity analysis should be addressed first.'" (quoting *Pearson*, 555 U.S. at 242)). First, we determine whether the official violated a constitutional right; next, we assess whether that right was clearly established when the official acted. *Carmona v. City of Brownsville*, 126 F.4th 1091, 1096 (5th Cir. 2025) (quoting *Converse v. City of Kemah*, 961 F.3d 771, 774 (5th Cir. 2020)); *see Baker v. Coburn*, 68 F.4th 240, 251 n.10 (5th Cir. 2023). When our cases speak of "objective unreasonableness," they merely describe how that second inquiry operates; the phrase is "descriptive, not additive." *Lewis v. Walley*, 168 F.4th 327, 332 n.2 (5th Cir. 2026). That must be so: It is always objectively unreasonable to violate a clearly established constitutional right, so the label adds no hurdle beyond the two-pronged framework that the Supreme Court prescribes. *See id.*; *Parker v. LeBlanc*, 73 F.4th 400, 406 n.1 (5th Cir. 2023).

challenge the district court's assessments regarding the sufficiency of the evidence—that is, the question whether there is enough evidence in the record for a jury to conclude that certain facts are true." *Id.* at 347. Put more simply, we "lack the power to review the district court's decision that a genuine factual dispute exists." *Id.* at 348.

But we do have authority to review the first type of conclusion—"the purely legal question whether a given course of conduct," *id.* at 347, would "violate[] clearly established . . . rights," *Finch*, 333 F.3d at 561 (quoting *Harlow*, 457 U.S. at 818); *see also Kinney*, 367 F.3d at 347. "Where factual disputes exist in an interlocutory appeal asserting qualified immunity," we assume that "the plaintiffs' version of the facts [is] true," *Kinney*, 367 F.3d at 348 (citing *Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000)), and then evaluate "whether the district court erred in concluding as a matter of law that officials are not entitled to qualified immunity on" that set of facts, *id.* at 347. We "consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment." *Id.* at 348 (citing *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996)). That is, where a defendant has appealed the denial of a summary-judgment motion that asserts qualified immunity, we can review the materiality of any fact disputes—but not their genuineness. *Id.* at 347; *Cunningham v. Castloo*, 983 F.3d 185, 190 (5th Cir. 2020); *Cole v. Carson*, 935 F.3d 444, 452 (5th Cir. 2019) (en banc).

Here, LeBlanc and Smith appealed the denial of their motion for summary judgment asserting qualified immunity. The district court determined that, with regard to LeBlanc and Smith's "legal responsibility over pretrial detainees," LeBlanc and Smith "err[ed]" as a matter of law "in arguing that [DPSC] had no responsibility over what befalls pretrial detainees at" MPCC. But having "resolved" that "legal question," the district court went on to conclude that "numerous questions of fact" (some of which the

district court listed) precluded summary judgment. We may not "review the district court's decision that a genuine factual dispute exists." *Kinney*, 367 F.3d at 348.

We may, however, review the district court's "purely legal" conclusion that LeBlanc and Smith went awry in contending that DPSC "had no responsibility over what befalls pretrial detainees at" MPCC. *See id.* That "the district court said that, in its view, material fact disputes preclude summary judgment does not deprive us of interlocutory appellate jurisdiction," as we "may of course decide whether the factual disputes [that] the district court said were material are in fact material." *Cunningham*, 983 F.3d at 190.

## III

### A

LeBlanc and Smith maintain that they should receive qualified immunity, urging only that they lack control over pretrial detainees under state law. But *Crittindon* compels us to reject this line of reasoning.

Per that decision, LeBlanc and Smith have at least some authority to control parish jails that house DPSC prisoners, as MPCC allegedly did. *See Kinney*, 367 F.3d at 348 (noting that we accept the plaintiffs' version of the facts as true in an interlocutory appeal asserting qualified immunity in which fact issues exist). Per a 1990s settlement agreement, any facility that holds prisoners in DPSC's custody must follow the "Basic Jail Guidelines," which are "designed to assure that the fundamental constitutional rights of [DPSC] offenders housed in local jails would not be jeopardized by such housing arrangements." *Crittindon*, 37 F.4th at 182, 191 (alteration in original); *see also Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 369 (5th Cir. 1998). This is so whether that facility is a state or local one and whether or not it has contracted to house DPSC's prisoners in local jails. *Crittindon*,

37 F.4th at 182, 191; *see* La. R.S. § 15:824(D) (providing that DPSC "may" enter into such contracts with local authorities for those authorities "to house additional prisoners" if DPSC "cannot accept" custody of prisoners committed to it "because of lack of facilities under [DPSC's] control").

And in *Crittindon*, we decided that DPSC has at least some level of control over whether local jails that house DPSC prisoners comply with the Jail Guidelines. 37 F.4th at 191. In that case, "DPSC-sentenced prisoners" sued several state and local officials, including LeBlanc as DPSC Secretary, for the prisoners' overdetention. *Id.* at 184–85. We concluded that, among other things, the DPSC defendants in that case were deliberately indifferent in failing to adopt policies that would ensure the prisoners' timely release. *Id.* at 186–88. This was so because DPSC has some responsibility for "local jails once they house DPSC prisoners"—namely, responsibility to ensure that the jails comply with the Jail Guidelines. *Id.* at 191. "DPSC enters into contracts with local jails to house DPSC's prisoners," but "even jails without DPSC contracts were required to comply with the [Jail] Guidelines as long as they housed DPSC prisoners." *Id.*

DPSC regularly audits local facilities to ensure Jail Guidelines compliance, *id.* at 182, 191, and "when a jail [is] not in compliance, DPSC help[s] the facility reach compliance," *id.* at 191; *see also id.* at 200 (Oldham, J., dissenting) (explaining that "when local jails fail to adhere to the [Jail] Guidelines, all DPSC can do is 'work with them' to try to 'get them in compliance'"). And "[i]f DPSC discovers a jail's noncompliance with the [Jail] Guidelines," DPSC can "remove DPSC prisoners from the institution," *id.* at 182 (majority op.); *accord id.* at 191—though this happens only "in rare scenarios," *id.* at 191. The removal of DPSC prisoners can make a real difference to a local jail because sheriffs receive payment according to the number of DPSC-sentenced prisoners that they hold in their facilities, as well as the number of days that those DPSC inmates spend in the

facility. *See* La. R.S. § 15:824(B)(1)(a). Local jails hold approximately half of the sentenced population with less than half of DPSC's budget, so the local jails certainly benefit from receiving *per diem* payments for housing DPSC's prisoners. In short, through the Jail "Guidelines and DPSC's audits of local parish jails, there is ample evidence that these DPSC officials had power to control the facilities in which DPSC housed its prisoners." *Crittindon*, 37 F.4th at 191.

Bound by *Crittindon*, we agree with the district court's determination that LeBlanc and Smith "err[ed]" in arguing that DPSC "had no responsibility over what befalls pretrial detainees at this local jail." Plaintiffs contend that LeBlanc and Smith violated Plaintiffs' constitutional rights by being deliberately indifferent to the risk of harm to Plaintiffs. In particular, they insist that DPSC prisoners attacked Plaintiffs because LeBlanc and Smith permitted MPCC to hold DPSC's sentenced prisoners and pretrial detainees together in conditions that fostered violence, despite evidence of danger of which LeBlanc and Smith were allegedly aware.[4]

Plaintiffs insist that LeBlanc and Smith committed rights violations with regard to the Jail Guidelines. As they put it themselves, Plaintiffs "challenge Smith's and LeBlanc's conduct of indiscriminately holding sentenced prisoners alongside pretrial detainees at MPCC without functional classification, investigation, or staff supervision, thus allowing the risk of harm from unchecked violence to flourish." If those allegations are true—as we assume at this juncture, *see Kinney*, 367 F.3d at 348 (citing *Wagner*, 227 F.3d at 320)—then, under *Crittindon*, LeBlanc and Smith had authority to help MPCC become Jail Guidelines-compliant again.

---

[4] LeBlanc and Smith do not argue in this interlocutory appeal that they were not deliberately indifferent—only that they lacked authority over pretrial detainees.

But we lack jurisdiction to determine whether MPCC actually hewed to the Jail Guidelines or whether LeBlanc and Smith helped it to do so. *E.g.*, *id.* The factual questions that the district court identified sound in Plaintiffs' claims that MPCC did not comply, *see, e.g.*, *Cunningham*, 983 F.3d at 190, but we have no authority to resolve those fact questions in this posture, *Kinney*, 367 F.3d at 347, 348. We may determine only "whether the district court erred in concluding as a matter of law that" LeBlanc and Smith "are not entitled to qualified immunity" on the set of facts that Plaintiffs have alleged. *Id.* at 347; *see id.* at 348 ("Where factual disputes exist in an interlocutory appeal asserting qualified immunity, we accept the plaintiffs' version of the facts as true." (citing *Wagner*, 227 F.3d at 320)). Here, it did not: Under *Crittindon*, if MPCC violated the Jail Guidelines, LeBlanc and Smith had some authority to help MPCC come back into Jail Guidelines compliance.

## B

LeBlanc and Smith's contrary arguments miss the mark. To begin, *Crittindon*'s reasoning does not hinge on whether the plaintiffs there were convicted inmates in DPSC's custody or pretrial detainees. Indeed, *Crittindon* made no such distinction. *See generally* 37 F.4th 177. And logic indicates that if LeBlanc and Smith have some control over the conditions at parish jails that house DPSC's sentenced prisoners, such as whether those facilities track the Jail Guidelines, exercise of that authority (or the decision not to exercise it) could affect conditions for all prisoners, including pretrial detainees.

LeBlanc and Smith cite decisions from our court that, in their view, establish that DPSC lacks authority over pretrial detainees. But most of those cases predate the Jail Guidelines and thus could not speak to whether DPSC officials have authority to ensure that local parish jails comply with those Guidelines. *See generally Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987);

*O'Quinn v. Manuel*, 773 F.2d 605 (5th Cir. 1985); *Campbell v. Bergeron*, 654 F.2d 719 (5th Cir. 1981) (unpublished table decision), *aff'g* 486 F. Supp. 1246 (M.D. La. 1980). And in any event, none of those cases involve the question whether DPSC officials may be responsible in their individual capacities for parish-jail conditions when that jail houses DPSC prisoners. *See Fairley v. Stalder*, 294 F. App'x 805, 812 (5th Cir. 2008) (dismissing official-capacity claims against the DPSC Secretary because he could not provide relief for harms arising from conditions of confinement in a parish jail—but where no one discussed or cited the Jail Guidelines); *Thompkins*, 828 F.2d at 304 n.8 (stating only that sheriffs have the general duty to administer jails and ensure that prisoners receive proper care); *O'Quinn*, 773 F.2d at 609 (concluding that a plaintiff had not stated facts sufficient to support a claim against the "police jury"); *see also Campbell*, 654 F.2d at 719 (holding a parish sheriff not liable for failure to promulgate policies).

Plaintiffs, for their part, contend that LeBlanc and Smith forfeited their qualified-immunity argument, but that, too, is incorrect. LeBlanc and Smith's motion for summary judgment expressly discussed qualified immunity. *See Rollins*, 8 F.4th at 397 ("A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal—or by failing to adequately brief the argument on appeal."). Indeed, the district court later agreed that LeBlanc and Smith "adequately raise[d] the issue of qualified immunity in their motion."

\*　　\*　　\*

As our precedent compels, we agree with the district court that, under *Crittindon*, LeBlanc and Smith have at least some authority over facilities like MPCC that house DPSC's prisoners—even if they also house pretrial detainees. But we lack jurisdiction to resolve the material fact issues that the district court identified. We therefore must dismiss the appeal.

No. 25-30076

We emphasize what we do not decide today. We reject only the single argument that LeBlanc and Smith urge to support qualified immunity.[5] We do not decide that they lack that immunity. That question remains for the district court on remand.

We DISMISS the appeal.

_____

[5] LeBlanc and Smith raise a number of other issues, but we may not review them at this posture. Again, our interlocutory appellate jurisdiction extends to only a small number of interlocutory orders. *E.g.*, *BancPass*, 863 F.3d at 397. None of the additional questions that LeBlanc and Smith raise fall into that limited category. If LeBlanc and Smith have not forfeited or waived those issues, they may be able to raise them in the district court in the first instance. *See Rollins*, 8 F.4th at 397. Here, we have jurisdiction to hear the appeal only of the denial of qualified immunity.